SCHOOL DISTRICT NO. 21, MORRILL COUNTY, NEBRASKA, APPELLANT, V. PEGGY OCHOA AND COMMISSIONER OF LABOR, STATE OF NEBRASKA, APPELLEES.

342 N.W.2d 665

Filed January 13, 1984. No. 83-330.

Donn C. Raymond of Raymond, Olsen, Ediger & Ballew, P.C., for appellant.

Paul D. Kratz, for appellee Commissioner of Labor.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

PER CURIAM.

This is an appeal from an order of the district court for Morrill County involving a claim for unemployment benefits under the provisions of Neb. Rev. Stat. §§ 48-601 et seq. (Reissue 1978). The order affirmed the decisions of the Nebraska Appeal Tribunal and claims deputy that concluded the claimant was entitled to benefits.

The claimant, Peggy Ochoa, certified to teach school in Nebraska, worked for three 6-week periods during the summers of 1980, 1981, and 1982 in the migrant program. The migrant program was set up by the U.S. Government under the Elementary and Secondary Education Act of 1965, 20 U.S.C. §§ 2761 et seq. (Supp. II 1978), and is a special education program for children who come into the geographical area with migrant farm workers. This program is federally funded, but local school districts, such as School District No. 21, the appellant, are responsible for administering the program.

After completing her third term of summer employment, ending July 10, 1982, the claimant filed for unemployment benefits with the Nebraska Department of Labor on November 10, 1982. Following a review of the records, the claims deputy concluded that Ms. Ochoa had left the Bayard migrant program on July 10, 1982, when the most recent work assignment was completed, and that since the program was of a temporary nature, no more work was available and the separation was a "layoff" due to lack of work, entitling the claimant to benefits as of November 7, 1982. This is the determination from which School District No. 21 appeals.

On November 10, 1982, the claimant also filed a simultaneous claim for benefits with the Nebraska Department of Labor, based upon her previous 9-month employment contract with school district No. 127 of Valentine, Cherry County, Nebraska. This claim, not at issue here, was disallowed by the claims deputy on November 19, 1982, because she

had not made contacts for employment in her profession.

The record indicates the claimant voluntarily quit her employment in Valentine in order to relocate and that she was properly disqualified for the requisite period of time. The claimant notified school district No. 127 in March of 1982 that she did not intend to return, so that at the time she was employed in the migrant program in the summer of 1982, she was not between successive teaching assignments for school district No. 127. At the time the claimant filed for unemployment claims, she was working as a substitute teacher in the Bayard school district.

Normally, the claimant would not have been entitled to make a claim for summer school unemployment benefits because, due to her 9-month employment with school district No. 127 of Valentine, she would have had an expectation of returning to work in the fall and would not have genuinely been attached to the labor market. But the fact situation here is different and presents a more difficult question because we are concerned with the summer school period.

The issue before us is whether the trial court erred in not disqualifying the claimant for unemployment insurance benefits because the 6-week contract was a "term" or "academic year" which disqualified her for unemployment benefits as provided by § 48-628 (Cum. Supp. 1982). The applicable language of that statute reads as follows: "An individual shall be disqualified for benefits: . . . (h) For any week of unemployment if benefits claimed are based on services performed . . . (2) after December 31, 1977, in an instructional . . . capacity for an educational institution if such week of unemployment begins during the period between two successive years, or during a similar period between two regular terms, whether or not successive, or during a period of paid sabbatical leave provided for in the individual's contract, to any individual if such indi-

vidual performs such services in the first of such academic years or terms and if there is a contract or a reasonable assurance that such individual will perform services in any such capacity for any educational institution in the second of such academic years or terms."

Section 48-640 states that an appeal may be taken from the decision of the district court to the Supreme Court of Nebraska in the same manner as other appeals under the Employment Security Law, §§ 48-601 to 48-668. Section 48-639 provides in part: "In any judicial proceeding under sections 48-638 to 48-640 the court shall consider the matter de novo upon the record."

In *Heimsoth v. Kellwood Co.*, 211 Neb. 167, 169, 318 N.W.2d 1, 2 (1982), where this court reviewed a determination as to whether a claimant voluntarily left employment, we stated: "The scope of review is de novo on the record from the District Court and it is the duty of this court to retry the issues of fact involved in the findings complained of and reach an independent conclusion thereof." Since the question in the present case is one of statutory reading and analysis dependent upon determining legislative intent, § 48-639 applies, and this court should reach an independent conclusion, considering the matter de novo upon the record.

The school district's argument is basically twofold. First, it seems to contend that the claimant was engaged in seasonal employment and therefore was not entitled to unemployment benefits. Secondly, it is claimed that the 6-week period during which the claimant taught in the special program was a "regular term" of school, that she had a reasonable assurance she would perform services during that term in the summer of 1983, and, therefore, under § 48-628(h)(2) she was disqualified for benefits for unemployment between those "terms."

The school district's reliance on authorities it cites, excluding benefits on account of seasonal

employment, is misplaced. Those cases depended on statutory law to that effect. Efforts to include an exclusion for seasonal benefits in 1978 Neb. Laws, L.B. 128, failed. We have no such exclusion. Casual employment may be excluded if it occurs between two successive years or between two regular terms, whether or not successive. The problem in this case is that because the claimant had given notice in the spring of 1982 that she would not return to the teaching position in Valentine the next fall, her summer employment did not fall between two years or terms in which she had contracts or a reasonable assurance of employment.

The question remains as to whether the 6-week summer programs were "regular terms" so as to exclude unemployment during the 46 weeks falling between those two periods. We believe the question must be answered in the negative.

As defined in the record, the periods of instruction were special education programs catering to a limited group of people. They lasted but 6 weeks. Webster's Third New International Dictionary, Unabridged (1968), defines "term" as follows at 2358: "4 : one of several divisions of the year in a school, college, or university representing a continuous period during which instruction is regularly given to students." See *People ex rel. Powell v. Board of Education*, 343 Ill. App. 382, 385, 99 N.E.2d 592, 593 (1951), where, although interpreting a contract, the court nevertheless said: "The word term is defined in the educational sense in the same dictionary as 'a definite continuous period during which instruction is regularly given to students; as, a school year of three terms . . . .' It cannot be doubted that in common acceptation a semester is a school term."

We conclude that the period of unemployment did not begin during the period between two successive years, or during a similar period between two regular terms.

The judgment of the district court was correct and is affirmed.

AFFIRMED.